B 10 (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).**

| | | | |
|---|---|---|---|
| Name of debtor: | Rebekah Susan Russell | Case number: | 12-51779-FJS |
| Name of creditor: | Bank of America, N.A. | Last four digits of any number you use to identify the debtor's account: | 3911 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. Principal due    (1) $ 239,531.64

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| _____ % | __/__/____ | __/__/____ | $ _____ |
| _____ % | __/__/____ | __/__/____ | $ _____ |
| _____ % | __/__/____ | __/__/____ | + $ _____ |

Total interest due as of the petition date    $ 0.00    Copy total here ▶    (2) + $ 0.00

3. Total principal and interest due    (3) $ 239,531.64

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates Incurred | | Amount |
|---|---|---|---|
| 1. Late charges | _____ | (1) | $ _____ |
| 2. Non-sufficient funds (NSF) fees | _____ | (2) | $ _____ |
| 3. Attorney's fees | _____ | (3) | $ _____ |
| 4. Filing fees and court costs | _____ | (4) | $ _____ |
| 5. Advertisement costs | _____ | (5) | $ _____ |
| 6. Sheriff/auctioneer fees | _____ | (6) | $ _____ |
| 7. Title costs | _____ | (7) | $ _____ |
| 8. Recording fees | _____ | (8) | $ _____ |
| 9. Appraisal/broker's price opinion fees | _____ | (9) | $ _____ |
| 10. Property inspection fees | _____ | (10) | $ _____ |
| 11. Tax advances (non-escrow) | _____ | (11) | $ _____ |
| 12. Insurance advances (non-escrow) | _____ | (12) | $ _____ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | _____ | (13) | $ 154.60 |
| 14. Property preservation expenses. Specify:_____ | _____ | (14) | $ _____ |
| 15. Other. Specify:_____ | _____ | (15) | $ _____ |
| 16. Other. Specify:_____ | _____ | (16) | $ _____ |
| 17. Other. Specify:_____ | _____ | (17) | + $ _____ |

18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above.    (18)  $ 154.60

B 10 (Attachment A) (12/11)                                                        Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

❑ No

☑ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

1. **Installment payments due**    Date last payment received by creditor    11/02/2012

    Number of installment payments due    (1)    0

2. **Amount of installment payments due**

    _____ installments @    $ _____

    _____ installments @    $ _____

    _____ installments @    + $ _____

    **Total installment payments due as of the petition date**    $ 0.00    Copy total here ▶ (2) $ 0.00

3. **Calculation of cure amount**    **Add total prepetition fees, expenses, and charges**    Copy total from Part 2 here ▶ + $ 154.60

    **Subtract total of unapplied funds** (funds received but not credited to account)    - $ _____

    **Subtract amounts for which debtor is entitled to a refund**    - $ _____

    **Total amount necessary to cure default as of the petition date**    (3) $ 154.60

    Copy total onto item 4 of Proof of Claim form

Post-Petition Payment Amount

| PMT DUE DATE | PRIN/INT | ESCROW | TOTAL |
|---|---|---|---|
| 12/01/2012 | $1,355.51 | $403.40 | $1,758.91 |

Bank of America, N.A. services the loan on the property referenced in this proof of claim. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of BANK OF AMERICA, N.A., "NOTEHOLDER".

Note holder, directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Note holder or has been duly endorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.

**Bank of America**
**Home Loans**

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

**Notice Date: 11/16/2012**
**Account No.:** ▓▓▓▓▓▓

Property address:
13 Patriot Crescent
Hampton, VA 23666

1 of 6



REBEKAH S RUSSELL
13 Patriot Cres
Hampton VA 23666-2815

---

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

Enclosed is an escrow analysis for your loan. The purpose of this notification is to advise you that the escrow portion of your payment is changing to $403.40 effective December 01, 2012. This notification is for informational purposes only. Your next billing statement will arrive shortly.

---

**ADDITIONAL INFORMATION**

Principal balance                    $239,531.64

This informational notice is being sent to the following borrowers at address set forth above in reference to the Chapter 13 Bankruptcy filing: REBEKAH S RUSSELL

---

**WHAT YOU NEED TO DO**

Please keep this notification for your records.

---

**THANK YOU FOR YOUR BUSINESS**

For additional information regarding your escrow analysis, or any other account details, call 1.800.669.5224, Monday-Friday 7a.m. - 7p.m. Local Time.



**Any areas where this is present represent redacted information.**

 Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.



**Any areas where this is present represent redacted information.**



**Bank of America**
**Home Loans**

| Account Number ▮▮▮▮ | Statement date 11/16/2012 | 3 of 6 |
|---|---|---|

Property address
13 Patriot Crescent

Rebekah S Russell

## ESCROW ACCOUNT REVIEW

**ESCROW EXPLAINED**

This escrow statement is being sent for **informational purposes only.** It should not be construed as an attempt to collect a debt or to modify the terms of your chapter 13 plan. Note that your chapter 13 bankruptcy plan may provide for the Trustee to pay escrow amounts outstanding on your loan as of the date you filed your bankruptcy case or may otherwise provide for the Trustee to pay amounts due to escrow.

Part of your monthly loan payment goes into an account to pay for your property taxes and insurance premiums. During the year, payments are made out of this account when tax or insurance bills come due. This notice describes any changes needed in your monthly payment to maintain enough money in your escrow account to pay these bills. In our step-by-step analysis, we determine the data shown below to calculate your new escrow payment.

**If this is your first escrow statement after filing your chapter 13 bankruptcy,** this escrow account review was performed as of the date that you filed for bankruptcy and your new monthly escrow payment has been calculated in accordance with applicable bankruptcy law. The amount shown in the Summary section below as the New monthly home loan payment is the updated and correct amount due for the month shown. If you previously received a monthly coupon for the same due date, the payment amount below is intended to replace the coupon you previously received, as the coupon was prepared and sent before we had notice of your chapter 13 bankruptcy filing. If you are making your monthly mortgage payments under your chapter 13 plan, please send the New monthly home loan payment amount shown below.

**If this is an annual escrow statement provided during your chapter 13 bankruptcy,** we have prepared this escrow statement to track your escrow obligations during the period when you are making payments under the terms of your chapter 13 plan.

**If you have filed a chapter 13 plan that provides for maintaining your home,** our step-by-step analysis is based on the assumption that you will be making your chapter 13 plan payments, including plan payments to cure amounts due from the period before your bankruptcy filing or otherwise due under your chapter 13 plan. If you are unable to complete your plan payments and your case is dismissed, converted to a chapter 7, or the automatic stay is lifted, then your monthly escrow payment will need to be recalculated to account for the cure amounts still due from the period before your bankruptcy filing or otherwise due under your chapter 13 plan.

*See below for:*
- an in-depth explanation of each step of your escrow analysis
- side-by-side comparison of last year's projected and actual data

**SUMMARY**

| | | |
|---|---|---|
| Base amount needed *(see Step 1)* | The expected monthly amount needed to pay your property taxes and insurance premiums | $403.40 |
| Shortage payment *(see Step 2)* | The monthly amount you must pay into your escrow account to keep the balance from falling below zero during the year | $0.00 |
| Reserve requirement *(see Step 3)* | The monthly amount allowed by federal law for unexpected tax and insurance increases and other costs | $0.00 |
| **New monthly escrow payment** *(see Step 4)* | | **$403.40** |
| **New monthly home loan payment effective 12/2012** *(see Step 4)* | | **$1,758.91** |

In future escrow analyses, Bank of America, N.A.. reserves the right to assess the amount allowed by federal law for unexpected tax and insurance increases and other costs.

## HOW WE CALCULATE YOUR ESCROW PAYMENT

**STEP 1**    **Determine base amount needed for the year**

| Escrow items | Amount needed | Frequency in months | Monthly amount needed | |
|---|---|---|---|---|
| Homeowners insurance | $1,289.00 | 12 | $107.42 | |
| FHA MIP | 107.83 | 1 | 107.83 | |
| City taxes | 1,128.90 | 6 | 188.15 | |
| **Total monthly base payment amount** | | | | **$403.40** |

**STEP 2**    **Determine lowest projected balance**

In the chart located below, we project the amounts you will pay into your escrow account next year and the amounts we will pay out for your insurance and tax bills. Remember, these figures are only projections and may not reflect the actual payments made at the time they are due.

| Month | Escrow deposit(s) | Tax payment(s) | Insurance payment(s) | MIP/PMI payment(s) | Balance |
|---|---|---|---|---|---|
| **Post-Petition Beginning balance** | | | | | **$1,233.25** |
| December 2012 | 403.40 | | | 107.83 | 1,528.82 |
| January 2013 | 403.40 | | | 107.83 | 1,824.39 |
| February 2013 | 403.40 | | | 107.83 | 2,119.96 |
| March 2013 | 403.40 | | 1,289.00 | 107.83 | 1,126.53 |
| April 2013 | 403.40 | | | 107.83 | 1,422.10 |
| May 2013 | 403.40 | 1,128.90 | | 107.83 | 588.77 * |
| June 2013 | 403.40 | | | 107.83 | 884.34 |
| July 2013 | 403.40 | | | 107.83 | 1,179.91 |
| August 2013 | 403.40 | | | 107.83 | 1,475.48 |
| September 2013 | 403.40 | | | 107.83 | 1,771.05 |

 Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.



Any areas where this is present
represent redacted information.

**STEP 2**　　**Determine lowest projected balance - Continued**

| Month | Escrow deposit(s) | Tax payment(s) | Insurance payment(s) | MIP/PMI payment(s) | Balance |
|---|---|---|---|---|---|
| October 2013 | 403.40 | | | 107.83 | 2,066.62 |
| November 2013 | 403.40 | 1,128.90 | | 107.83 | 1,233.29 |
| **Post-Petition Ending balance** | | | | | **$1,233.29** |
| **\*Lowest projected balance** | | | | | **$588.77** |
| Shortage payment amount | | | | | $0.00 |

The Post-Petition Beginning and Ending balances above are projected balances, which assume that all payments due under your chapter 13 bankruptcy plan will be made, including your regularly scheduled mortgage payments due after the bankruptcy filing and all plan payments to cure amounts due from the period before your bankruptcy filing or otherwise due under your chapter 13 plan.

\* Using the Post-Petition balances, your Lowest projected balance (LPB) reflects a positive balance (a balance greater than zero). In the next step, we will compare this amount to your escrow reserve requirement to determine if there is an overage.

**STEP 3**　　**Determine reserve requirement**

Federal law allows for the collection of a reserve amount to maintain a cushion for unexpected tax and/or insurance increases and other costs. The reserve used for this period is shown below.

| | | |
|---|---|---|
| Lowest projected balance *(see step 2 above)* | $588.77 | |
| Total reserve requirement (16.6% of the base amount) * | 588.77 | |
| Additional amounts required | .00 | |
| **Monthly reserve requirement ($0.00 divided by 12)** | | **$0.00** |
| **Potential overage** | **$0.00** | |

\* Base amount equals the total of payments anticipated to be paid out of the escrow account during the year but excludes Private Mortgage Insurance (PMI) or MIP amounts.



**STEP 4**　　**Determine monthly payments**

**Calculation of monthly escrow payments**

| | | |
|---|---|---|
| Base amount needed for taxes and/or insurance *(see Step 1)* | $403.40 | |
| Shortage payment *(see Step 2)* | .00 | |
| Reserve requirement *(see Step 3)* | .00 | |
| **Total monthly escrow payment** | | **$403.40** |

**Calculation of monthly home loan payment**

| | | |
|---|---|---|
| Principal and/or interest | $1,355.51 | |
| Total monthly escrow payment | 403.40 | |
| **Total monthly home loan payment effective  12/2012** | | **$1,758.91** |

**LAST YEAR IN REVIEW**

**Current analysis compared to previous**　　　　　　　　　　　　　　　*Monthly*

| Amount needed for taxes and insurance | Last analysis | This analysis |
|---|---|---|
| Homeowners insurance | $93.25 | $107.42 |
| FHA MIP | 109.73 | 107.83 |
| City taxes | 207.75 | 188.15 |
| Total base escrow payment | $410.73 | $403.40 |
| Shortage payment | .00 | .00 |
| Reserve requirement | 8.44 | .00 |
| Rounding amount | .00 | .00 |
| **Monthly escrow payment** | **$419.17** | **$403.40** |
| Principal and/or interest | $1,355.51 | $1,355.51 |
| Monthly escrow payment | 419.17 | 403.40 |
| **Total payment amount** | **$1,774.68** | **$1,758.91** |

**Summary of escrow change**

As shown, your base escrow amount decreased. Your reserve percentage remained unchanged. Your reserve payment decreased. The result of these factors caused your total escrow payment to decrease.

A side-by-side comparison of last year's projected escrow account activity and actual activity can be found below.

**Any areas where this is present represent redacted information.**



**Bank of America**
**Home Loans**

5 of 6

**Last year's escrow payments**

**If you have recently filed a chapter 13 bankruptcy,** then we have provided below a side-by-side comparison of your prior projected escrow account activity to the actual account activity.

**If this is an annual escrow statement provided during your chapter 13 bankruptcy,** then the projected escrow account activity below was performed in accordance with the terms of your chapter 13 plan. At the same time, we also maintained a separate accounting that reflected your escrow account activity as would be provided under the terms of your loan documents outside of bankruptcy (shown below under the heading "Actual"). The Actual escrow activity includes both the receipt of your regular monthly mortgage payments to escrow and any cure payments made under the terms of your chapter 13 plan for escrow amounts due from the period before your bankruptcy filing or otherwise due under your chapter 13 plan. Below is the side-by-side comparison of the plan projected activity to the actual activity for last year. Upon the completion of your chapter 13 plan, if all payments due under the chapter 13 plan are received and taxes and insurance were paid in the amounts anticipated then the projected and actual ending balances should match. If you are unable to complete your chapter 13 plan payments and your case is dismissed, converted to a chapter 7, or the automatic stay is lifted, then the actual accounting shown below will be used in performing your next escrow analysis.

*Projected*

| Date | Activity | Paid In | Paid Out | Balance |
|---|---|---|---|---|
| | Beginning balance | | | $2,371.54 |
| 03/02/2012 | Homeowners insurance | | 1,119.00 | 1,252.54 |
| 03/02/2012 | FHA MIP | | 109.73 | 1,142.81 |
| 04/01/2012 | Apr Payment | 419.17 | | 1,561.98 |
| 04/02/2012 | FHA MIP | | 109.73 | 1,452.25 |
| 05/01/2012 | May Payment | 419.17 | | 1,871.42 |
| 05/02/2012 | FHA MIP | | 109.73 | 1,761.69 |
| 05/02/2012 | City taxes | | 1,246.48 | 515.21 * |
| 06/01/2012 | Jun Payment | 419.17 | | 934.38 |
| 06/02/2012 | FHA MIP | | 109.73 | 824.65 |
| 07/01/2012 | Jul Payment | 419.17 | | 1,243.82 |
| 07/02/2012 | FHA MIP | | 109.73 | 1,134.09 |
| 08/01/2012 | Aug Payment | 419.17 | | 1,553.26 |
| 08/02/2012 | FHA MIP | | 109.73 | 1,443.53 |
| 09/01/2012 | Sep Payment | 419.17 | | 1,862.70 |
| 09/02/2012 | FHA MIP | | 109.73 | 1,752.97 |
| 10/01/2012 | Oct Payment | 419.17 | | 2,172.14 |
| 10/02/2012 | FHA MIP | | 109.73 | 2,062.41 |
| 11/01/2012 | Nov Payment | 419.17 | | 2,481.58 |
| 11/02/2012 | FHA MIP | | 109.73 | 2,371.85 |
| 11/02/2012 | City taxes | | 1,246.48 | 1,125.37 |
| 12/01/2012 | Dec Payment | 419.17 | | 1,544.54 |
| 12/02/2012 | FHA MIP | | 109.73 | 1,434.81 |
| 01/01/2013 | Jan Payment | 419.17 | | 1,853.98 |
| 01/02/2013 | FHA MIP | | 109.73 | 1,744.25 |
| 02/01/2013 | Feb Payment | 419.17 | | 2,163.42 |
| 02/02/2013 | FHA MIP | | 109.73 | 2,053.69 |
| 03/01/2013 | Mar Payment | 419.17 | | 2,472.86 |
| 03/02/2013 | Homeowners insurance | | 1,119.00 | 1,353.86 |
| 03/02/2013 | FHA MIP | | 109.73 | 1,244.13 |
| | Ending balance | | | $1,244.13 |

*Actual*

| Date | Activity | Paid In | Paid Out | Balance |
|---|---|---|---|---|
| | Beginning balance | | | $972.81 |
| 04/05/2012 | FHA MIP payment | | 109.73 | 863.08 |
| 04/06/2012 | Apr Payment | 419.17 | | 1,282.25 |
| 05/01/2012 | City tax pmt | | 1,246.48 | 35.77 |
| 05/04/2012 | FHA MIP payment | | 109.73 | -73.96 * |
| 05/07/2012 | May Payment | 419.17 | | 345.21 |
| 06/06/2012 | FHA MIP payment | | 109.73 | 235.48 |
| 06/11/2012 | Jun Payment | 419.17 | | 654.65 |
| 07/06/2012 | FHA MIP payment | | 109.73 | 544.92 |
| 07/10/2012 | Jul Payment | 419.17 | | 964.09 |
| 08/07/2012 | FHA MIP payment | | 109.73 | 854.36 |
| 08/07/2012 | Aug Payment | 419.17 | | 1,273.53 |
| 09/05/2012 | Sep Payment | 419.17 | | 1,692.70 |
| 09/07/2012 | FHA MIP payment | | 107.83 | 1,584.87 |
| 10/03/2012 | Oct Payment | 419.17 | | 2,004.04 |
| 10/04/2012 | FHA MIP payment | | 107.83 | 1,896.21 |
| 11/01/2012 | City tax pmt | | 1,128.90 | 767.31 |
| 11/02/2012 | Nov Payment | 419.17 | | 1,186.48 |
| 11/06/2012 | FHA MIP payment | | 107.83 | 1,078.65 |
| 11/16/2012 | Misc. posting | 154.60 | | 1,233.25 P |
| | Ending balance | | | $1,233.25 |

* Lowest projected balance

P - The letter (P) beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.

In performing the projection above, Bank of America, N.A. assumed that all regularly scheduled mortgage payments would be made that were due prior to the projection period.

Any areas where this is present represent redacted information.



**Any areas where this is present
represent redacted information.**

Loan Number

MIN NO:

FHA Case No.

**NOTE**

**Commonwealth of Virginia**

07/10/2009
[Date]
13 Patriot Crescent Hampton, VA 23666

[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means CENTURY LENDING COMPANY

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of Two Hundred Fifty-Two Thousand Five Hundred Seven and 00/100ths

Dollars (U.S. $ 252,507.00            ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of 5.000 percent (         5.000 %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

(A)  Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on 09/01/2009          . Any principal and interest remaining on the first day of August 01, 2039         , will be due on that date, which is called the "Maturity Date."

(B)  Place
Payment shall be made at 9920 Corporate Campus Dr, Ste 3000, Louisville, KY 40223
or at such place as Lender may designate in writing by notice to Borrower.

(C)  Amount
Each monthly payment of principal and interest will be in the amount of U.S. $1,355.51              . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D)  Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

FHA Virginia Fixed Rate Note - 10/95

-1R(VA) (9404).01
VMP Mortgage Solutions, Inc (800)521-7291
Page 1 of 3                                    Initials: RSR

**Any areas where this is present represent redacted information.**

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and 000/1000                percent (        4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

 -1R(VA) (0404).01

Page 2 of 3

Initials: _RR_

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

*Rebekah S Russell* _____ (Seal)
Rebekah S. Russell                         -Borrower

_____ (Seal)          _____ (Seal)
                   -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                   -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                   -Borrower                              -Borrower

*[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated **07/10/2009**
_____, on the Property located in **Hampton** _____, Virginia.

My Commission Expires:

**7-31-2012**                         *Frieda V. Hoop*
                                    Notary Public

**PAY TO THE ORDER OF**
_____
**WITHOUT RECOURSE**
**CENTURY LENDING COMPANY**
*Jaime C Pitts*
*Jaime C Pitts Funding Asst.*

V860-1R(VA) (0404).01                Page 3 of 3

090013562                                                                P00068 AUG 14 09

THIS INSTRUMENT PREPARED BY
DENNIS L. MATTINGLY, ATTORNEY AT LAW
PINNACLE TITLE
3801 SPRINGHURST BLVD., SUITE 102
LOUISVILLE, KY 40241
TELEPHONE: (502) 326-9826

Return To:
CENTURY LENDING COMPANY
9920 CORPORATE CAMPUS DR, STE 3000,
LOUISVILLE, KY 40223

Tax Map Reference #:

RPC/Parcel ID #:

03 A 012 - 03A 00 020

Prepared by:

Century Lending Company
9920 Corporate Campus Dr STE 3000 Louisville, KY 40223
[Space Above This Line For Recording Data]

Commonwealth of Virginia                    DEED OF TRUST        FHA Case No.

                                                          MIN

THIS DEED OF TRUST ("Security Instrument") is made on 07/10/2009
The Grantor is Rebekah S. Russell, a single woman

Samuel I White

("Borrower"). The trustee is Pinnacle Title  VA
, a resident of the Commonwealth of Virginia, whose full
residence or business address is 3801 Springhurst Blvd 209 Business Park Dr.
Virginia Beach, VA , and
a resident of the Commonwealth of Virginia, whose full residence or business address is 23462
                                          trustees (any one of whom may act and who are referred to as
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee
for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS. CENTURY LENDING COMPANY

("Lender") is organized and existing under the laws of Kentucky                        , and

FHA Virginia Deed of Trust with MERS - 4/96
Wolters Kluwer Financial Services
VMP®-4N(VA) (0507).01          Amended 7/98
Page 1 of 8                    Initials: RSR



Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117

RUSSELL    RS

.610.                                    001    002

■ **Any** areas where this is present
  **represent** redacted information

PG0069 AUG 14 09

has an address of 9920 CORPORATE CAMPUS DR, STE 3000, LOUISVILLE, KY 40223
. Borrower owes Lender the principal sum of
Two Hundred Fifty-Two Thousand Five Hundred Seven and 00/100ths
Dollars (U.S. $252,507.00                    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on
08/01/2039                    . This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b)
the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust,
with power of sale, the following described property located in ~~Montgomery~~ *Hampton*
Virginia:

"See Attached Exhibit A"


which has the address of 13 Patriot Crescent                              [Street]
Hampton                                           [City], Virginia 23666    [Zip Code]
("Property Address");
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for
Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing or canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.
    Borrower and Lender covenant and agree as follows:
    UNIFORM COVENANTS.
    1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.
    2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a)
taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground
rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the
Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development
("Secretary"), or in any year in which such premium would have been required if Lender still held the Security
Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance
premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance
premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the
Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums
paid to Lender are called "Escrow Funds."

Initials: RGR

PG0070 AUG 14 09

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, "as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue

Initials: RSR

PG0071 AUG 14 09

hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

VMP®-4N(VA) (8807).01                          Page 4 of 8                          Initials: _RGR_

PG0072 AUG 14 09

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint

VMP®-4N(VA) (0507).01                     Page 5 of 8                     Initials: RSR

PG0073 AUG 14 09

and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

VMP®-4N(VA) (9507).01                              Page 6 of 8                              Initials: _BcR_

PG0074 AUG 14 09

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of          5  % of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Identification of Note. The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

22. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider            ☐ Growing Equity Rider            ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

Initials: _RGR_

VMP®-4N(VA) (0507).01            Page 7 of 8

PG0075 AUG 14 09

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS
THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY
CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument
and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____    *Rebekah S. Russell*_____(Seal)
                                    Rebekah S. Russell                -Borrower

_____

_____                    _____(Seal)
                                                                      -Borrower

_____(Seal)    _____(Seal)
                      -Borrower                                       -Borrower

_____(Seal)    _____(Seal)
                      -Borrower                                       -Borrower

_____(Seal)    _____(Seal)
                      -Borrower                                       -Borrower


COMMONWEALTH OF VIRGINIA,          Hampton               County, ss:
The foregoing instrument was acknowledged before me this 07/10/2009
by Rebekah S. Russell, a single woman

                                   _____Frieda V. Hoop_____
My Commission Expires:                         Notary Public
7-31-2012
VMP®-4N(VA) (0507).01              Page 8 of 8



PG0076 AUG 1409

File No.: 
Pinnacle Title

## EXHIBIT "A"

Street Address:     13 Patriot Crescent
                    Hampton, Virginia 23666

All that certain lot, piece, or parcel of land located in the City of Hampton, Virginia, known and designated as Lot Numbered Twenty (20), as shown on that certain plat entitled, "TEDDER TERRACE, SECTION THREE-A, CITY OF HAMPTON, VIRGINIA," made by E. J. Keller, Inc., dated March 29, 1978, and recorded on March 29, 1978, in Plat Book 7, page 42, in the Clerk's Office of the Circuit Court of the City of Hampton, Virginia.

BEING the same property conveyed to Rebekah S. Russell, unmarried, by Deed dated March 23, 1998, of record in Book 1235, Page 2064, in the Office aforesaid.

Parcel ID: 03A012-03A00020

```
INSTRUMENT #090013562
RECORDED IN THE CLERK'S OFFICE OF
HAMPTON ON
AUGUST 14, 2009 AT 12:11PM

LINDA B. SMITH, CLERK
RECORDED BY: CLS
```

*U00796139*

1433  7/20/2009  75843294/1

**Any** areas where this is present represent redacted information.

120018948

PG0108 DEC 17 12

Recording Requested By:
**Bank of America**
Prepared By:
**Diana De Avila**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID#
G-Pin:    03A012-03A00020
Property Address:
13 Patriot Crescent
Hampton, VA 23666-2815
VAOM-ADT 21605018   12/4/2012 BK01

This space for Recorder's use

MIN #:                    MERS Phone #:  888-679-6377

## NOTICE OF ASSIGNMENT OF DEED OF TRUST

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR CENTURY LENDING COMPANY its successors and assigns (herein "Grantor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 hereby assign and transfer to BANK OF AMERICA, N.A. its successors and assigns (herein "Grantee") whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all its right, title, and interest to a certain Deed of Trust described below.

Original Lender:    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS
                    NOMINEE FOR CENTURY LENDING COMPANY
Made by:            REBEKAH S. RUSSELL, A SINGLE WOMAN
Original Trustee:   SAMUEL I WHITE
Date of Deed of Trust: 7/10/2009    Original Loan Amount: $252,507.00
Recorded in Hampton County, VA on: 8/14/2009, book 0068, page 1409 and instrument number 090013562

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
12-8-12

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS") AS NOMINEE FOR
CENTURY LENDING COMPANY

By: _____
    Carmela Leuridan
    Assistant Secretary

State of California
County of Ventura

On DEC 08 2012    before me, _____Kathy Serrano_____, Notary Public, personally appeared _____Carmela Leuridan_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____Kathy Serrano_____    (Seal)
My Commission Expires: _____12/27/15_____

KATHY SERRANO
Commission # 1982571
Notary Public - California
Los Angeles County
My Comm. Expires Dec 27, 2015

INSTRUMENT #120018948
RECORDED IN THE CLERK'S OFFICE OF
HAMPTON ON
DECEMBER 17, 2012 AT 12:49PM

LINDA B. SMITH, CLERK
RECORDED BY: RMJ

**Any** areas where this is present
**represent** redacted information.